```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
WALTER G. PIETSCH,

                    Plaintiff,
                                        MEMORANDUM & ORDER
          -against-                     13-CV-4696(JS)(WDW)

POLICE OFFICER VITO MARCANTONIO,
Shield # 299, HOFSTRA UNIVERSITY,
COMMISSION ON PRESIDENTIAL
DEBATES, DEMOCRATIC NATIONAL
COMMITTEE, and REPUBLICAN
NATIONAL COMMITTEE,

                    Defendants.
----------------------------------X
APPEARANCES
For Plaintiff:     Walter G. Pietsch, pro se
                   3379 Woodward Avenue
                   Wantagh, NY 11793

For Defendants:    No appearances.
```

SEYBERT, District Judge:

On August 21, 2013, pro se plaintiff Walter G. Pietsch ("Plaintiff") filed an in forma pauperis civil rights Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against Police Officer Vito Marcantonio, Shield # 299 ("P.O. Marcantonio"), Hofstra University ("Hofstra"), Stuart Rabinowitz ("Rabinowitz")[1], the Commission on Presidential Debates ("Commission"), the Democratic National Committee ("DNC"), and the Republican National Committee ("RNC" and collectively, "Defendants"). Upon review of

---

[1] Although Plaintiff names only Hofstra in the caption of his Complaint, he lists Rabinowitz, President of Hofstra, as a party on page 2 of his Complaint. Given the liberal construction afforded to pro se pleadings, the Court so construes the Complaint to name Rabinowitz as a Defendant in this case and the Clerk of Court shall amend the caption accordingly.

the declaration accompanying Plaintiff's application to proceed <u>in forma pauperis</u>, the Court finds that Plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees.  <u>See</u> 28 U.S.C. § 1915(a)(1).  Accordingly, Plaintiff's application to proceed <u>in forma pauperis</u> is GRANTED.

However, for the reasons that follow, Plaintiff has failed to allege a plausible claim against Hofstra, Rabinowitz, the Commission, the DNC, and the RNC.  Accordingly, Plaintiff's claims against these Defendants are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Plaintiff is granted leave to re-plead against Hofstra and Rabinowitz within thirty (30) days from the date of this Order, and may amend his Complaint to add the Commission, the DNC, or the RNC should he discover, at a later date, that P.O. Marcantonio was employed by any of these entities on the date in question.  Plaintiff's Complaint shall proceed against P.O. Marcantonio, and Plaintiff shall provide the Court with an address for P.O. Marcantonio in writing within thirty (30) days from the date of this Order, in order to permit the United States Marshals Service ("USMS") to serve copies of the Summons, Complaint, and this Order upon P.O. Marcantonio.

<h2 style="text-align:center;"><u>BACKGROUND</u>[2]</h2>

Plaintiff claims that, on October 16, 2012, he visited

---

[2] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

2

Hofstra's campus with an "old hand cart" containing fliers he had planned to distribute to attendees of the Presidential Debate scheduled for later that evening. (Compl. at 5.) Plaintiff complains that he "was stopped by an individual wearing a white shirt and dark blue law enforcement type pants." (Id.) The individual was "in his mid-30s," "wore no hat," "was completely bald," had "Shield #299 pinned to his shirt," and "said his name was 'Vito Marcantonio.'" (Id.) According to the Complaint, P.O. Marcantonio told Plaintiff to "leave immediately, or you will be arrested," and Plaintiff "left, upset and very angry." (Id. at 5-6.)

Later that evening, Plaintiff returned to the Hofstra campus and joined a "mini-Forum . . . for those who could not get into the main [Presidential] debate." (Id. at 6.) According to Plaintiff, he "unveiled [his] three-phase vision to make our country a true, caring democracy run by the people." (Id.) The three phases are alleged to be: "(1) Equal Media Access Constitutional Amendment; (2) Employee/Consumer Control of all Institutions; and (3) The Dr. Martin Luther King, Jr. 'Dream Dollar' (to be added to the national currency to create millions of jobs . . . ." (Id.) When asked if the attendees supported each phase of Plaintiff's proposal, Plaintiff claims that "almost everyone there raised their hands in support. . . ." (Id.) Given this showing of support, Plaintiff surmises that "had the audience

at the actual Presidential Debate been given the opportunity to review my proposed Constitutional Amendment and then raise the question from the floor as to whether or not each candidate endorsed or opposed it, the entire 2012 Presidential Election might have concluded very differently." (Id. at 7.)

Plaintiff next describes that, "[t]he night after the Presidential Debate, at about 1:00 a.m., I awoke bolt upright, finding myself totally unable to breathe and certain I was going to die." (Id.) Plaintiff was taken by ambulance to the hospital, where he was admitted with "dangerously low" blood pressure and remained under the care of a cardiologist for the next three days. (Id.) Approximately six months later, in the beginning of April, Plaintiff alleges that he realized that he had suffered "severe physical and emotional damage as a result of the confrontation with [P.O.] Marcantonio." (Id.)

In an effort to determine the "full identity of the Lawman who called himself 'Vito Marcantonio,'" Plaintiff contacted Hofstra and was advised that "Homeland Security was responsible for all security related to the Debate on 10/16/12." (Id.) Plaintiff then recounts his efforts to ascertain the identity of the employer of P.O. Marcantonio, beginning with his inquiry to "Homeland Security's Federal Protective Mega-Center." (Id. at 8.) Plaintiff claims that he was advised that Homeland Security was not responsible for security at the Hofstra debate. Accordingly,

Plaintiff describes the inquiries that he again made to Hofstra, as well as to the Nassau County Police Department, the Secret Service, the FBI, the Associated Press, Newsday, CNN, the New York Times, and the Commission on Presidential Debates, none of which have provided the requested information.  (Id. at 8-10.)  Given the difficulty Plaintiff has experienced in determining the identity and employer of this "phantom lawman," Plaintiff concludes that there must be a "coverup" concerning this individual and claims that "Hofstra's President, himself, was involved in the coverup."  (Id. at 9.)

As a result of the foregoing, Plaintiff claims to have suffered an "increased" stress level that has "compounded other, [unspecified] pre-existing conditions."  (Id. at 10.)  For relief, Plaintiff seeks an order compelling: (1) the "Defendants and the media to disseminate the content of [his] flier to the American people, particularly those who attended the Presidential Debate on October 16, 2012"; (2) Hofstra to disclose the identity of the "phantom lawman"; and (3) the inclusion, "in all future Presidential elections, [of] third parties able to obtain ballot status in at least one third of the several States [] in all subsequent Presidential Debates . . . ."  (Id. at 11-12.)  Plaintiff also seeks to recover a damages award of $1 million and suggests that "those responsible for amending our Constitution seriously consider adopting [his] proposed 'Equal Media Access

5

Case 2:13-cv-04696-JS-WDW  Document 7  Filed 11/18/13  Page 6 of 14 PageID #: 47


Constitutional Amendment.'" (<u>Id.</u> at 12.)

DISCUSSION

I. <u>Application to Proceed In Forma Pauperis</u>

Upon review of Plaintiff's declaration in support of his application to proceed <u>in forma pauperis</u>, the Court determines that Plaintiff's financial status qualifies him to commence this action without prepayment of the filing fees. <u>See</u> 28 U.S.C. § 1915(a)(1). Therefore, Plaintiff's request to proceed <u>in forma pauperis</u> is GRANTED.

II. <u>Application of 28 U.S.C. § 1915</u>

Section 1915 of Title 28 requires a district court to dismiss an <u>in forma pauperis</u> complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b). The Court is required to dismiss the action as soon as it makes such a determination. <u>See</u> <u>id.</u> § 1915A.

Courts are obliged to construe the pleadings of a <u>pro se</u> plaintiff liberally. <u>See</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008); <u>McEachin v. McGuinnis</u>, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citations omitted). The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Id. at 678; accord Wilson v. Merrill Lynch & Co., Inc., 671 F.3d 120, 128 (2d Cir. 2011). While "'detailed factual allegations'" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

III. Section 1983

> Section 1983 provides that
>
>> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983; accord Rehberg v. Paulk, --- U.S. ----, 132 S. Ct. 1497, 1501-02, 182 L. Ed. 2d 593 (2012). To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution

of the United States.'" Rae v. Cnty. of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)). Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Here, Plaintiff claims that his First Amendment rights were deprived by Defendants.

A. Claims Against Hofstra and Stuart Rabinowitz

To the extent that Plaintiff seeks to hold Hofstra and Rabinowitz liable for alleged violations of Section 1983, his claims are not plausible because Plaintiff fails to establish that they are state actors for purposes of Section 1983.

In order to state a claim for relief under Section 1983, a plaintiff must establish a deprivation of constitutional rights by a person acting "under color of law." Briscoe v. LaHue, 460 U.S. 325, 329-330, 103 S. Ct. 1108, 75 L. Ed. 2d 96 (1983); Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012). It is well-established that Section 1983 "constrains only state conduct, not the 'acts of private persons or entities.'" Hooda v. Brookhaven Nat. Lab., 659 F. Supp. 2d 382, 393 (E.D.N.Y. 2009) (quoting Rendell-Baker v. Kohn, 457 U.S. 830, 837, 102 S. Ct. 2764, 2769, 73 L. Ed. 2d 418 (1982)). Thus, "a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." Flagg v. Yonkers

Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and citation omitted).

Although private citizens are generally not state actors for purposes of Section 1983, liability may nevertheless be imposed under Section 1983 upon private individuals who are deemed state actors pursuant to a conspiracy theory. See, e.g., Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-325 (2d Cir. 2002). In order to state a Section 1983 conspiracy claim, a plaintiff "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Id. at 324-325 (citing Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999)).

Here, Plaintiff fails to allege that Hofstra or Rabinowitz were acting under color of state law, nor are there any facts from which the Court could reasonably construe a conspiracy claim against either of these Defendants. Thus, in the absence of any allegation of state action by these Defendants, Plaintiff's Section 1983 claims against them are not plausible as a matter of law. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)). Accordingly, Plaintiff's Section

9

1983 claims against Hofstra and Rabinowitz are DISMISSED WITHOUT PREJUDICE.

  B. <u>Claims Against the Commission, the DNC, and the RNC</u>

  Similarly, Plaintiff's allegations against the Commission, the DNC, and the RNC do not support a plausible Section 1983 claim against any of these private entities.

  As to the Commission, the Second Circuit has described the Commission as "a private, non-profit corporation formed by the Democratic and Republican parties for the purpose of sponsoring presidential debates." <u>Crist v. Comm'n on Presidential Debates</u>, 262 F.3d 193, 194 (2d Cir. 2001) (citing <u>Buchanan v. Fed. Election Comm'n</u>, 112 F. Supp. 2d 58, 61 (D.D.C. 2000)); <u>see also</u> <u>Fulani v. Brady</u>, 729 F. Supp. 158, 159 (D.D.C. 1990) (describing the Commission as a tax-exempt organization "founded by the Chairmen of the Democratic and Republican National Parties in order to assume the role of sponsoring general election debates between the presidential and vice-presidential candidates which had previously been performed by the League of Women Voters . . . ."). Thus, the Commission is not a state actor for purposes of Section 1983 liability. Similarly, neither the RNC nor the DNC are state actors. <u>See</u> <u>Emmanuelli v. Priebus</u>, 500 F. App'x 886, 888-89 (11th Cir. 2012) (affirming dismissal of Section 1983 claims against the RNC because the RNC is not a state actor for purposes of appellant's statutory and constitutional claims); <u>Fulani v.</u>

McAuliffe, No. 04-CV-6973, 2005 WL 2276881, at *5 (S.D.N.Y. Sept. 19, 2005) (dismissing Section 1983 claims against the DNC because it is a non-state actor and holding that the DNC's "mere receipt of public funds is insufficient to transform private entities or individuals into state actors." (citing Rendell-Baker 457 U.S. at 841) (additional citation omitted)).

Although there are exceptions to the general rule that a private party does not act under color of state law, such as (1) when a private party conspires with a state actor (see supra p. 8); (2) when a private party receives public funds, but only under specific, limited circumstances, see, e.g., Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982); or (3) when a private entity performs a public function that is "traditionally the exclusive prerogative of the [s]tate," see, e.g., Rendell-Baker, 457 U.S. at 842 (emphasis in original), Plaintiff alleges no facts tending to suggest that any of those exceptions apply to his Section 1983 claims against the Commission, the RNC, or the DNC.  Accordingly, because these Defendants are not alleged to have acted under color of state law, Plaintiff has not alleged a plausible claim against any of these Defendants and his Section 1983 claims against them are DISMISSED WITHOUT PREJUDICE.[3]

---

[3] In addition to the insufficiency of the allegations of state action, Plaintiff has failed to allege that any of these Defendants engaged in conduct rising to the level of a Constitutional violation.  Based on the Court's reading of the Complaint, it appears that Plaintiff named these Defendants in

    C.    <u>Claims Against P.O. Marcantonio</u>

Although the allegations against P.O. Marcantonio are thin, given Plaintiff's <u>pro se</u> status, the Court declines to <u>sua sponte</u> dismiss the claims against P.O. Marcantonio at this early stage in the proceeding. However, the USMS will not be able to serve P.O. Marcantonio without more information.

Accordingly, Plaintiff shall provide an address for service of the Summons and Complaint upon P.O. Marcantonio, in writing, to the Court within thirty (30) days from the date of this Order. Upon receipt of such information, the Clerk of the Court shall forward copies of the Summons, Complaint, and this Order to the USMS for service upon P.O. Marcantonio.

## IV. <u>Leave to Amend</u>

Given the pleading deficiencies noted above, the Court has considered whether Plaintiff should be granted leave to re-plead. The Second Circuit has emphasized that a "court should not dismiss [a <u>pro se</u> complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks and citations omitted). Under Rule 15(a) of the Federal

---

the event that it was discovered that P.O. Marcantonio worked for any of them on October 16, 2012. Should Plaintiff discover the identity of P.O. Marcantonio's employer on October 16, 2012, Plaintiff may seek to amend his Complaint to add that employer as a Defendant in this case if so warranted at that time.

Rules of Civil Procedure, the "court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a).

As discussed supra, based on the allegations in Plaintiff's Complaint, the Court is unable to discern any state action on the part of Hofstra or Rabinowitz. Accordingly, the Court grants Plaintiff leave to amend his Complaint to allege any plausible claims he may have against Hofstra and Rabinowitz in accordance with this Order. In so doing, Plaintiff must attempt to allege how Hofstra and Rabinowitz, as a private entity and individual, were acting under color of state law during the Constitutional deprivation alleged. Plaintiff must file his Amended Complaint within thirty (30) days from the date of this Order. Any Amended Complaint shall be clearly labeled "AMENDED COMPLAINT" and shall bear docket number 13-CV-4696(JS)(WDW).

As for the Commission, RNC, and DNC, as noted supra, Plaintiff may seek to amend his pleadings to name either of these entities if he discovers, at a later date, that P.O. Marcantonio was employed by one of them on October 16, 2012.

## CONCLUSION

Plaintiff's application to proceed in forma pauperis is GRANTED. Plaintiff's claims against the Commission, the RNC, and the DNC are sua sponte DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1), and Plaintiff may seek to amend his Complaint to add one of these entities if he discovers,

13

at a later date, that one of them was P.O. Marcantonio's employer on the date at issue. Plaintiff's claims against Hofstra and Rabinowitz are DISMISSED WITHOUT PREJUDICE, and Plaintiff is granted leave to re-plead against these Defendants in an Amended Complaint to be filed within thirty (30) days from the date of this Order. If Plaintiff fails to do so, such claims will be dismissed with prejudice. Finally, Plaintiff's claims against P.O. Marcantonio shall proceed, and Plaintiff shall provide the Court, in writing, with an address for service upon P.O. Marcantonio within thirty (30) days from the date of this Order.

No Summons shall issue at this time. Once Plaintiff provides the service address for P.O. Marcantonio to the Court, the Clerk of the Court shall forward it to the U.S. Marshal Service together with copies of the Summons, Complaint, and this Order for service upon P.O. Marcantonio. The Clerk of the Court is directed to mail a copy of this Order to the pro se Plaintiff.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

SO ORDERED.

/s/ JOANNA SEYBERT  
Joanna Seybert, U.S.D.J.

Dated: November __18__, 2013  
      Central Islip, New York